```
              UNITED STATES DISTRICT COURT
                       FOR THE
                  DISTRICT OF VERMONT


UNITED STATES OF AMERICA,        :
                                 :
     v.                          :
                                 :       Case No. 2:14-cr-19
RICHARD CYR,                     :
                                 :
          Defendant.             :
```

## Opinion and Order

Defendant Richard Cyr has submitted two motions for the Court's consideration.  First, Defendant moves to suppress a search warrant for a residence and vehicle.  Second, Defendant moves to dismiss the indictment on First Amendment grounds.  For the following reasons, both motions are **denied.**

**I.   Motion to Suppress**

   **A. Factual Background**

   Mr. Cyr is charged with one count of using the internet to persuade a fifteen-year-old female, K.S., to engage in illegal sexual activity and with one count of attempting to commit that offense.  See 18 U.S.C. § 2422(b).  Mr. Cyr allegedly created a fake sixteen-year-old female Facebook profile under the name Ann Clancy, which he used to contact teenage girls and convince them to engage in sexual acts with "her" older boyfriend.  Mr. Cyr allegedly met with K.S. on October 14, 2013 after communicating

with her on Facebook using the Ann Clancy alias, then drove her to a remote location and engaged her in sexual activity.

On October 16, 2013 K.S.'s mother called the Orange County Sheriff's Department Special Investigation Unit ("OCSIU"), which primarily investigates child abuse and sex crimes, and reported an incident involving her daughter.  K.S. gave an interview the following day and on three or four other occasions.  During one of these interviews K.S. described the vehicle in which she had allegedly been driven.  Police located a vehicle matching K.S.'s description at Randolph Union High School (RUHS) on October 21, 2013 and determined it was registered to Carmella Cyr.  A record search revealed that Richard Cyr also resided at the same address and that the property contained a main residence and an apartment residence.

Detective Scott Clouatre was the lead detective in this investigation.  This case was his second investigation with the OCSIU but he had previous experience as a patrol officer.  He has been in the law enforcement field since 2007.

Prior to applying for the warrant challenged in this motion, Detective Clouatre obtained and executed a state warrant for K.S. and Anne Clancy's Facebook accounts on October 21, 2013.  On October 22, 2013 K.S. identified Mr. Cyr in a photo array.  She also gave law enforcement access to her Facebook account.  An officer posing as K.S. communicated with "Ann

2

Clancy."  Law enforcement could find no evidence that Ann Clancy was a real person.

On October 25, 2013, K.S. gave an interview in which she provided more details of the incident including alleged sexual contact.  Detective Clouatre testified that this interview, along with the other evidence the investigation had already revealed, provided probable cause to arrest Mr. Cyr.  Detective Clouatre and another officer traveled to the Cyr residence in an attempt to locate Mr. Cyr at approximately 3:00 pm on October 25.  They found him in the process of moving his belongings using the Cyr vehicle from the apartment residence to the main residence.  Mr. Cyr was taken into custody and officers secured the premises and the Cyr vehicle.  Mr. Cyr was read and ultimately waived his *Miranda* rights.  He gave an interview at the police station and remained in custody after the interview.

After about three hours of interviewing Mr. Cyr, Detective Clouatre called the state court clerk's office to discuss conditions and bail.  Then he began drafting a search warrant, an attachment, an affidavit, and a warrant application.  During the hearing on this motion, Detective Clouatre testified that some of the language in these documents was boilerplate and some had been copied and pasted from a previous warrant, but the rest was entirely new.  Detective Clouatre sent the package of draft documents to an Assistant State's Attorney who gave him feedback

3

over the phone.  Detective Clouatre incorporated this feedback into the final version.  Normally Vermont state warrants may only be executed between 6:00 am and 10:00 pm without an exception being granted.[1]  Detective Clouatre testified the drafting process was a "rush job" because he was concerned about getting the warrant approved and executed during this window.

Around 9:30 pm the same day, Detective Clouatre emailed the warrant, attachment, affidavit, and warrant application to a state judge who reviewed the documents and then phoned Detective Clouatre.  The judge administered the oath to Detective Clouatre and ultimately signed the warrant.  Detective Clouatre then phoned an officer at the Cyr residence and informed him of the potential crimes to which the search related and the types of items to be seized.  The search began around 10:00 pm.

Detective Clouatre picked up Mrs. Cyr when her shift at RUHS finished around 11:00 pm.  He gave her a copy of the warrant and drove her to her residence, approximately five minutes away.  They both stayed at the scene for the remainder of the search.  Once Detective Clouatre arrived he supervised the rest of the search.  All items seized were placed in his vehicle.  He reviewed each item to ensure it fell within the parameters of the search warrant.  He reviewed some items at the

---

[1] An exception was ultimately granted so that the search could take place after hours.

4

scene and some at the station.  Detective Clouatre also began drafting an inventory of items seized at the scene, which he finished the next morning.  He took the computers and other items seized, such as hard drives, a digital camera, Mrs. Cyr's cell phone, and some of Mr. Cyr's papers, to the station.  The electronic items were subsequently examined at the Vermont Forensics Laboratory and additional evidence was found.

Detective Clouatre testified that he knew that he was required to list the offenses to which the search related on the warrant but did not do so.  However, the warrant application did list statutes, including those related to statutory sexual assault, luring a child, and contributing to juvenile delinquency.  The government claims the omission of the word "application" at the end of the phrase "records relating to violations of statutes listed on the warrant" was inadvertent and Detective Clouatre testified that it was a mistake.

Subsequent to the challenged warrant three federal search warrants were issued.  Two were issued on February 11, 2014, one for a Gmail account and one for a Hotmail account.  The third was issued on February 13, 2014, for K.S. and Ann Clancy's Facebook accounts.

**B. Legal Standard**

The Fourth Amendment to the United States Constitution protects against "wide ranging exploratory searches" by

mandating that a search warrant describe with particularity the place to be searched and the persons or things to be seized. *United States v. Rosa*, 626 F.3d 45, 61 (2010) (quoting *Maryland v. Garrison*, 480 U.S. 79, 84 (1987)).  The requirement that warrants be particular in their descriptions "makes general searches under them impossible and prevents seizure of one thing under a warrant describing another."  *Marron v. United States*, 275 U.S. 192, 196 (1927).

    Suppression is not automatic when the Fourth Amendment has been violated.  Rather the question turns on the culpability of the police and the potential of exclusion to deter wrongful police conduct in the future.  *Herring v. United States*, 555 U.S. 135, 141 (2009).  The benefits of deterrence must outweigh the costs.  *Id.*  In deciding whether to suppress evidence courts evaluate whether law enforcement acted in "good faith," but the inquiry is objective rather than subjective.  *Id.* at 142.  Courts ask whether "police conduct [is] sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that that such deterrence is worth the price paid by the justice system."  *Id.* at 144.  The court must decide whether a reasonably well-trained officer would have known that the search was illegal in light of all the circumstances.  *Id.* at 145.

**C. Discussion**

Defendant makes several arguments in his Motion to Suppress. First, because the search warrant failed to specify a crime and the items to be seized, it constituted an impermissible general warrant and all evidence derived from it should be suppressed. Second, the fruits of the illegal search warrant should be excluded, including 1) the search at the Vermont Forensic Laboratory of the computers and hard drives seized and 2) the federal search warrants obtained by the government for email accounts based on evidence adduced at the forensic lab. Third, even if the warrant had not been invalid on its face, Defendant argues that the original warrant lacked probable cause to search for anything beyond Mr. Cyr's Facebook files. Finally, the good faith exception should not apply in this case because any reasonably well-trained officer looking at the warrant application would have recognized it as a prohibited general warrant because it failed to specify a crime.

Defendant's first argument is moot because the government concedes that Detective Clouatre's omission of the word "application" from the end of the phrase "records relating to violations of statutes listed on the warrant" renders the warrant technically invalid on its face. This concession is well-taken because the Fourth Amendment requires particularity in the warrant itself, not just in the supporting documents.

7

*See Groh v. Ramirez*, 540 U.S. 551, 557 (2004); *United States v. Rosa*, 626 F.3d 56, 62-63 (2d Cir. 2010) (recognizing that *Groh* abrogated a previous Second Circuit opinion to the extent it permitted consideration of unattached and unincorporated supporting documents to cure an otherwise defective search warrant).

The government challenges Defendant's other three arguments.  First, it argues that the federal warrants did not flow from the challenged search warrant and their fruits are therefore not subject to exclusion.[2]  The government claims that probable cause to search the Facebook account arose prior to and independently of the challenged search.  Law enforcement already had access to K.S.'s Facebook communications with "Ann Clancy" and K.S. had already identified Mr. Cyr and his car.  Moreover, Detective Clouatre obtained a state search warrant for "Ann Clancy's" and K.S.'s Facebook accounts on October 21, 2013 – four days before the search warrant contested in this Motion was issued.  The government contends law enforcement learned of Mr. Cyr's email accounts on Hotmail and Gmail through the Facebook

---

[2] The government does not appear to dispute that the search at the Vermont Forensics Laboratory was fruit of the search challenged in this Motion.  However, the Court declines to apply the exclusionary rule for the reasons explored in detail below, so there is no reason to exclude the subsequent search.

8

records.[3]  Therefore, there was independent probable cause for the subsequent federal Hotmail and Gmail searches because they flowed naturally from the state Facebook warrant.  The state Facebook warrant was also an independent source of probable cause for the broader federal Facebook warrant.

The Court declines to suppress the search warrant for the reasons stated below.  However, even if the Court excluded evidence discovered during the search of Mr. Cyr's residence, the Facebook and email records should not be suppressed because law enforcement discovered them through independent sources. *See e.g.*, *Murray v. United States*, 487 U.S. 533, 542 (1988) ("The independent source doctrine . . . rest[s] . . . upon the policy that, while the government should not profit from its illegal activity, neither should it be placed in a worse position than it would have otherwise occupied.").  The state judge found that there was probable cause to search "Ann Clancy's" and K.S.'s Facebook accounts several days before the challenged warrant in this case was issued.  The federal Facebook warrant states that law enforcement learned of the Hotmail account through the state records.  Gov. Ex. 2 at 14.  Law enforcement apparently discovered the Gmail address from the

---

[3] Hotmail is owned by Microsoft.  Gmail is owned by Google.  The federal warrants do not appear to have covered any Yahoo accounts potentially owned by Mr. Cyr as Defendant suggests they did in his motion.

9

Hotmail address.  Gov. Ex. 2 at 22.  Probable cause existed independently from the proceeds of the initial search. Therefore there is no reason to suppress the federal warrants as fruits of the challenged warrant in this case because they were issued independently of this warrant.

Next, Defendant supports his argument that the government did not have probable cause to search for anything beyond Facebook files by suggesting: that there was no evidence that K.S. had sent him any photos other than a headshot, that Mr. Cyr told Detective Clouatre (or another officer) that he did not have a cell phone, that there was no evidence K.S. had communicated with anyone by letter or any other medium, and that there was no reason to think there were any drawings or mechanically created records that might be found.

The government argues that law enforcement had probable cause to seize the category of records and information described in the warrant.  Although the government concedes that Mr. Cyr used Facebook as his principal means of contacting K.S., it argues the law does not constrain the scope of a search warrant to a known method or medium the defendant used to accomplish the crime.  The Court agrees that law enforcement may look for evidence of crimes through other mediums if, in light of the facts, there is probable cause to believe that searching other

10

Hotmail address.  Gov. Ex. 2 at 22.  Probable cause existed independently from the proceeds of the initial search. Therefore there is no reason to suppress the federal warrants as fruits of the challenged warrant in this case because they were issued independently of this warrant.

Next, Defendant supports his argument that the government did not have probable cause to search for anything beyond Facebook files by suggesting: that there was no evidence that K.S. had sent him any photos other than a headshot, that Mr. Cyr told Detective Clouatre (or another officer) that he did not have a cell phone, that there was no evidence K.S. had communicated with anyone by letter or any other medium, and that there was no reason to think there were any drawings or mechanically created records that might be found.

The government argues that law enforcement had probable cause to seize the category of records and information described in the warrant.  Although the government concedes that Mr. Cyr used Facebook as his principal means of contacting K.S., it argues the law does not constrain the scope of a search warrant to a known method or medium the defendant used to accomplish the crime.  The Court agrees that law enforcement may look for evidence of crimes through other mediums if, in light of the facts, there is probable cause to believe that searching other

means of communication would reveal evidence of criminal activity.

The task of the issuing magistrate judge is to make a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit" there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238. The reviewing court's duty is to ensure the magistrate judge had a "substantial basis" for concluding that probable cause existed. *Id.* (internal quotation omitted). The "quanta of proof" necessary to establish probable cause is "only the probability, and not a prima facie showing, of criminal activity." *United States v. Wagner*, 989 F.2d 69, 72 (2d. Cir. 1993) (quoting *Illinois v. Gates*, 462 U.S. 213, 235 (1983)). A reviewing court accords substantial deference to the finding of a judicial officer that probable cause existed. *Id.*

The Court holds that there was a fair probability that searching papers, cell phones, Mrs. Cyr's computer, and the other items Defendant challenges would turn up evidence related to the crimes of which Mr. Cyr was suspected. Detective Clouatre testified he seized cell phones because they can access the internet and Mr. Cyr was suspected of using the internet to lure a minor. It was reasonable to assume that other methods of communication were used or would provide relevant evidence.

11

Finally, the government argues suppression is unwarranted because Detective Clouatre and the officers executing the warrant acted in good faith.  In *United States v. Leon* the Court held that the exclusionary rule does not apply if the police acted in "objectively reasonable reliance" on an invalid warrant.  468 U.S. 897, 922 (1984).  The burden is on government to show the officers' objectively reasonable reliance on the warrant.  *United States v. George*, 975 F.2d 72, 77 (2d Cir. 1992).  Defendant argues the officers' reliance on the warrant was objectively unreasonable because "any reasonably well trained officer . . . would have recognized it as a prohibited general warrant, because it failed to specify a crime."  ECF No. 48 at 13.

The government's counterargument relies heavily on the Second Circuit's decision upholding the trial court's denial of a motion to suppress in *United States v. Rosa*, 626 F.3d 56 (2d. Cir. 2010).  There are several factual similarities between *Rosa* and the present case.  First, the warrant itself in *Rosa* described the residence to be searched and the property to be seized but did not incorporate the supporting documents or set forth the nature of the suspected criminal activity.  However, the warrant *application* stated the property to be searched was evidence of three New York criminal offenses (two sex offenses and one firearms offense).  Next, the affiant swore to the truth

of the warrant application and personally participated in the execution of the warrant.  Finally, the documents were drafted, issued, and executed "with necessary speed in the early hours of the morning" and the officers proceeded as though the limitations contemplated by the supporting documents were present in the warrant itself.  *Id.* at 66.

The *Rosa* court declined to apply the exclusionary rule even though it held that the warrant was defective because it failed to link the items to be searched and the suspected criminal activity.  *Id.* at 62.  Although the court acknowledged relying on unincorporated, unattached supporting documents does not cure a constitutionally defective warrant, those documents "are still relevant to [a] determination of whether the officers acted in good faith, because they contribute to [an] assessment of the officers' conduct in a particular case."  *Id.* at 64.  In reaching a conclusion that the officers acted reasonably, the court found it relevant that: the application made it clear the purpose of the search was to obtain evidence of child pornography and child molestation, the affiant swore that based on his specialized training he believed the search was likely to reveal evidence of child pornography, the affiant was familiar with the contemplated limits of the search, and there was no evidence the officers searched for or seized any items that were unrelated to the crimes for which probable cause had been shown

13

or that the affiant had misled the town justice.  *Id.* at 64-65.  The court held the error was the product of "isolated negligence" and, therefore, there was no deterrent value in applying the exclusionary rule.  *Id.* at 65.

The government argues the present case has more favorable facts than *Rosa* because here the warrant itself was more specific.  The warrant in this case made some reference to criminal activity by mentioning "receiving images of KS over the Internet" and "websites involving luring children/minors."  Moreover, it had express limiting language (*i.e.* "records relating to violations of the statutes listed on the warrant"), unlike the warrant in *Rosa*.  The government argues that had the word "application" been added the warrant would have been facially valid.  The *Rosa* warrant made no allusion to the crime under investigation.

The government also points out that every case Defendant cites was distinguished by the *Rosa* court apart from one case, *Galpin*.  It argues that *Galpin* is inapposite because it involved a general warrant authorizing officers to search, without limit, for property "that will constitute, substantiate, or support violations of NYS Correctional Law, section 168-f subdivision four, NYS Penal Law or Federal Statutes."  *Id.* at 441.  The court found the latter two clauses impermissibly broad.  Moreover, the *Galpin* court did not reach the question of good

14

faith but rather remanded that issue (and others) to the district court. *Id.* at 453.

Defendant argues that *Rosa* is distinguishable because this was not an isolated mistake but rather one of a series of mistakes that Detective Clouatre made, including the following:

- The warrant application states that he received a report of a "sexual assault" on October 16, 2013. Detective Clouatre testified that he really did not learn of any alleged sexual contact until the October 23 interview of K.S. and that this was a mistake in hindsight.
- The first paragraph of the affidavit lists only one address rather than the address of both the residence and the apartment and makes no mention of the car.
- The state warrant for the Facebook accounts suffered from the same deficiencies as the warrant at issue in this motion but was not drafted under any time pressure. Detective Clouatre testified he was aware he was supposed to list the statutes on the warrant itself and that this was another error.
- A sentence that begins "The real property consist of:" is then followed by a description of what items are to be searched for rather than a description of real property. Detective Clouatre testified that the state's attorney suggested he add the description to the affidavit and he made an executive decision to put it there.
- Detective Clouatre testified he could not remember what K.S. said when viewing the photo array but counsel for Defendant suggested that his statement in the affidavit that the jaw looked similar was incorrect.
- The affidavit states Mrs. Cyr was due to finish work at approximately 8:00 pm when it was really 11:00 pm. Detective Clouatre testified this was a typo.
- The section entitled "TECHNICAL TERMS" begins at paragraph 4 and is missing paragraphs 1 through 3. Detective Clouatre testified he copied boilerplate language but failed to renumber the paragraph.
- The attachment says "As used above the terms 'records' and 'information' include . . ." but the word "information" does not appear above.
- There is no Box 3 listed on the inventory.

15

- The inventory states monitors were seized but Detective Clouatre testified this was a mistake and none actually were seized.
- The inventory states the search began around 10:00 pm but Detective Clouatre was not actually at the scene at 10:00 pm.
- Defendant also appears to suggest that it was inappropriate to seize a recorder and a camera under the terms of attachment as it was written.  Detective Clouatre testified they were seized as electronic devices.

The Court notes that there are also some subtle factual differences between the present case and *Rosa*.  First, in *Rosa* the children who reported that they had been sexually assaulted had viewed child pornography with the defendant so there was perhaps more reason to search the defendant's computers.  Next, Defendant argues that the present case is distinguishable because Detective Clouatre was not present during the entire search.  It is unclear from the opinion whether the investigator in *Rosa* was actually present the entire time or not.

Finally, Defendant argues that the search was improper because no officers at the scene had a copy of the search warrant, and, because some items such as broken computers were left behind, it was not really clear what was going on or what should have been taken.  According to Defendant, the errors Detective Clouatre made were not inadvertent because he twice submitted warrants that were invalid on their face.

None of the facts or arguments Defendant points to or the Court has noted above are sufficient reasons to depart from the

16

Second Circuit's holding in *Rosa*. The Court holds that the government has met its burden of proving that officers in the present case acted objectively reasonably. Detective Clouatre relied on input from the state's attorney and his conduct violating the Fourth Amendment was an accident. Detective Clouatre was not sufficiently culpable such that the deterrent value of excluding the evidence outweighs the cost to the causes of truth and justice. There is nothing to suggest that the application itself lacked reasonable particularity or that the failure to incorporate the application into the warrant was anything other than an inadvertent act of negligence. Moreover, it does not appear that the search the officers actually conducted was overbroad or that any officer felt entitled to search for anything other than evidence related to the crimes for which probable cause existed. In short there was nothing to suggest deliberateness and culpability on the officers' part, just as was the case in *Rosa*. *Id.* at 65. Therefore, the deterrent value of applying exclusionary rule would be low and the cost of exclusion would be high. Accordingly, Defendant's Motion to Suppress is **denied**.

## II.  Motion to Dismiss

Defendant moves to dismiss the indictment because he claims the statute under which charges have been brought is overbroad

and violates the First Amendment.  The first count of the federal indictment states:

> From about October 12, 2013 to October 16, 2013, in the District of Vermont, the defendant, Richard Cyr, then a 27-year-old-man used a means and facility of interstate commerce, namely, the Internet and a computer, to knowingly persuade, induce, and entice an individual who had not attained the age of 18 years, that is, K.S. to engage in sexual activity for which ***a person*** can be charged with a criminal offense under the law of the State of Vermont.  13 V.S.A. § 3252.  18 U.S.C. § 2422(b).

(emphasis added).  The second count alleges an attempt under the same statute.  18 U.S.C. § 2422(b) states:

> Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which ***any person*** can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

(emphasis added).  13 V.S.A. § 3252 is Vermont's sexual assault statute.  Subsection c states:

> No person shall engage in a sexual act with a child under the age of 16, except: (1) where the persons are married to each other and the sexual act is consensual; or (2) where the person is less than 19 years old, the child is at least 15 years old, and the sexual act is consensual.

Defendant points out the difference between the "a" in the indictment and the "any" in the federal statute highlighted above because "any" is defined to have meanings that "a" does not share.  This difference, Defendant argues, is significant.  Defendant essentially claims that the words "any person" in 18

18

U.S.C. § 2422(b) must be read to mean "all persons" or "every person."  By applying to every person, the federal law would fail to properly take into account the exceptions under state law listed above.  The statute would therefore "sweep[] within the federal statute's ambit protected speech" because there are citizens of Vermont who are legally permitted to engage in consensual sexual relations with minors under the exceptions in subsection c.  ECF No. 49 at 2.

"The overbreadth doctrine prohibits the Government from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process."  *United States v. Gagliardi*, 506 F.3d 140, 147-48 (2d Cir. 2007) (quoting *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 255 (2002)).  Defendant argues *Gagliardi* "acknowledges" that 18 U.S.C. § 2422 implicates speech.  ECF No. 49 at 4.  However, the Second Circuit actually held that speech is not protected by the First Amendment when it is the vehicle of the crime itself.  Section 2422 punishes the act of enticing or attempting to entice a minor and it therefore "does *not* implicate speech."  *Id.* at 149 (emphasis added).  The court held that no protected speech would be chilled under the statute because there is no First Amendment right to persuade minors to engage in illegal sex acts.

Section 2422(b) did not somehow revise the Vermont sexual assault statute so as to eliminate the exceptions in subsection

19

c. The federal law references "sexual activity for which any person *can be charged*" (emphasis added). Persons falling within the exceptions to the state statute *cannot* be charged. Moreover, reading the "any" in the statute to mean "every" would effectively require a conclusion that no one could be prosecuted under Section 2422(b) because there are likely no child exploitation crimes for which *all* people can be prosecuted. Moreover, there is no conceivable reason Congress would have intended such a meaning. Defendant's argument is based on an illogical interpretation of the statute. *United States v. American Trucking Assns., Inc.*, 310 U.S. 534, 543 (1940) (courts will not construe a statute in a manner that leads to absurd or futile results). Accordingly, Defendant's Motion to Dismiss is **denied.**

Dated at Burlington, in the District of Vermont this 14th day of November, 2014.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge