IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF VERMONT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | Criminal no.  2:14-CR-19 |
| v | ) | |
| | ) | |
| | ) | |
| RICHARD CYR | ) | |

**MOTION TO SUPPRESS EVIDENCE DERIVED FROM
FORENSIC EXAMINATION OF DEFENDANT'S HARD DRIVES**

NOW COMES the Defendant, RICHARD CYR, through counsel, Maryanne E. Kampmann, Esq., of Stetler, Allen & Kampmann, and hereby moves the Court pursuant to F.R.Cr.P. 12(b)(3), to enter an Order suppressing at trial the use of all evidence procured from a search of Mr. Cyr's hard drive, on the grounds that the evidence was obtained in violation of Defendant's constitutional rights under the Fourth Amendment to the United States Constitution.

**PROCEDURAL HISTORY**

On October 9, 2014, an evidentiary hearing was held before this Court on Defendant's Motion to Suppress Search Warrant for Residence and Vehicle.[1]  Det. Scott Clouatre testified at the hearing for the government.  On November 14, 2014, this Court issued a written decision denying Defendant's motion.[2]

A month later, on December 17, 2014, the government filed a Second Superseding Indictment, charging Defendant with, *inter alia*, possessing, producing and distributing child pornography.  The evidence on which the additional counts is based was gleaned from a forensic examination of a hard drive seized from Defendant's vehicle.  This

---

[1]Defendant asks that the Court take judicial notice of document no. 48.

[2]*See also* document no. 63.

**Stetler, Allen & Kampmann**
95 St. Paul Street, Burlington, Vermont 05401

motion seeks to suppress that evidence on the grounds that the execution of that search was conducted in a manner that rendered it an impermissible general exploratory search. Although Defendant noted in passing in his first motion that there was no probable cause to search for child pornography, he acknowledged at footnote 4 that he had not been indicted for possession of child pornography. Accordingly, Defendant did not specifically brief that issue. This Court noted in its written decision, at 8, n.2, as follows:

> The government does not appear to dispute that the search at the Vermont Forensics Laboratory was fruit of the search challenged in this Motion. However, the Court declines to apply the exclusionary rule for the reasons explored in detail below, so there is no reason to exclude the subsequent search.

In the Court's subsequent analysis, however, the Court did not address the issue raised herein, because Defendant had not raised the issue. As noted, Defendant raises the issue now based on the second superseding indictment charging him with offenses related to child pornography.

The narrow issue raised by this motion is whether the government violated his Fourth Amendment rights by conducting a search for child pornography pursuant to a search warrant that did not authorize such a search.

## STATEMENT OF RELEVANT FACTS

On October 25, 2013, Defendant was arrested at his home by Det. Scott Clouatre and bail was set at $10,000.00. Bail was posted on October 26, 2013, at which time Defendant was flash cited to appear October 28, 2013, for an arraignment in Vermont Superior Court, Criminal Division (Orange Unit). At his arraignment, Defendant was charged and pled not guilty to one count of statutory sexual assault, 13 V.S.A. §3252(c), and one count of sexual exploitation-luring child/attempted luring, 13 V.S.A. §2828. Following his arraignment, Defendant was released on conditions, including a 24-hour curfew.[3]

---

[3]The state court case remained pending until August 19, 2013, at which time it was dismissed by the Orange County State's Attorney without prejudice, following a request by the public defender

On the night of Defendant's arrest, a search warrant signed by Superior Court Judge Robert Gerety, Jr.[4] was executed at the home he shared with his mother. Officers seized, *inter alia*, several computers and hard drives. That evidence was turned over to the Internet Crimes Task Force Computer Forensic Laboratory for analysis, and a forensic examination was conducted by Deb Jasinski. Jasinski issued a Forensic Analysis Report (hereinafter "Report") dated March 5, 2014.[5] Although the Report does not indicate on what date(s) Jasinski conducted her search, the government has provided Defendant with notes taken by Agent Delph on February 5, 2013. The notes appear to be based on a conversation Agent Delph had with Jasinski about the analysis, so the search appears to have been completed by February 5, 2013. Defendant was then indicted by the grand jury on February 12, 2013, and arraigned on the indictment February 13, 2013.

On page 2 of Jasinski's Report it states as follow:

"Scope of Request (truncated and paraphrased):

    - search for keywords related to investigation of reported sexual assault

    - *search for evidence of possession of child pornography*

    - search for evidence of attempting to entice other minors using electronic means"

(emphasis added).

As authority for this search, at page 3 of the Report, Jasinski cites the search warrant signed by Judge Gerety. This is the same warrant that Defendant challenged in his initial motion to suppress, and which this Court upheld as to the search of Defendant's residence and vehicle. In his first motion, Defendant did not specifically challenge Jasinski's findings based on her forensic analysis of Defendant's hard drive, because

---

to depose the complainant. *See* Defendant's Exhibit A attached hereto (docketing sheet, Orange Superior Court, Criminal Division, docket no. 442-10-13Oecr), final two entries. By the time that the state case was dismissed, of course, Defendant had been indicted federally.

    [4]*See* Exhibit B attached hereto.

    [5]*See* Exhibit C attached hereto.

Defendant had not been indicted for offenses related to child pornography.  As noted *supra*, however, he has since been indicted for offenses related to child pornography.  He now challenges the execution of the search of his hard drives on the grounds that the warrant signed by Judge Gerety did not authorize a search for child pornography.

The Application for Search Warrant with Affidavit referenced three statutes: 13 V.S.A. §3252(c) (statutory sexual assault); 13 V.S.A. §2828 (luring a child); and, 13 V.S.A. §1301 (contributing to juvenile delinquency).  No reference was made to 13 V.S.A. §2827 (possession of child pornography), nor was there mention of probable cause to search for child pornography.  It cannot be argued that the child pornography found on the hard drive resulted incidentally from a search of the hard drive for evidence of the crimes that this Court deemed authorized under the October 25, 2013 warrant; rather, Jasinski stated in her report at page 2 that a search for child pornography was within the scope of the search she *intended to conduct*.  Again, under "Authority to Search" at page 3, Jasinski asserts that the hard drive was "seized and analyzed according to" Judge Gerety's search warrant.  Nowhere in the Report does she specify, however, where the warrant authorized her to search for child pornography.  In fact, the warrant authorized no search for child pornography.

## MEMORANDUM OF LAW

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched , and the person or things to be seized.

U.S. Const. Amend. IV.

Indiscriminate searches and seizures violate the Fourth Amendment.  Payton v. New York, 445 U.S. 573, 583 (1980).  This case involves the search of electronic information stored on hard drives seized from Defendant's home under a warrant. Computers, containing as they do a vast array of information, fall into a special category with respect to the particularity requirement under the Fourth Amendment.  As the Court

noted in <u>United States v. Galpin</u>, 720 F.3d 436, 446 (2d Cir. 2013), advancements in technology make the safeguarding of personal information stored on a computer of paramount importance.

> Where, as here, the property to be searched is a computer hard drive, the particularity requirement assumes even greater importance.  As numerous courts and commentators have observed, advances in technology and the centrality of computers in the lives of average people have rendered the computer hard drive akin to a residence in terms of the scope and quantity of private information it may contain.

<u>Id</u>. at 446.

Similarly, in <u>Riley v. California</u>, ___ U.S. ___, 134 S.Ct. 2473 (2014), the Supreme Court held that cellular telephones seized during an arrest may not be searched incident to arrest without a warrant.  The rationale being that cellular telephones–like computers–contain an immense amount of personal information from which a great deal can be learned about an individual.

> The storage capacity of cell phones has several interrelated consequences for privacy. First, a cell phone collects in one place many distinct types of information—an address, a note, a prescription, a bank statement, a video—that reveal much more in combination than any isolated record. Second, a cell phone's capacity allows even just one type of information to convey far more than previously possible. The sum of an individual's private life can be reconstructed through a thousand photographs labeled with dates, locations, and descriptions; the same cannot be said of a photograph or two of loved ones tucked into a wallet. Third, the data on a phone can date back to the purchase of the phone, or even earlier. A person might carry in his pocket a slip of paper reminding him to call Mr. Jones; he would not carry a record of all his communications with Mr. Jones for the past several months, as would routinely be kept on a phone.

<u>Id</u>. at 2489.

Because of the potential for privacy violations on a scale not envisioned prior to the age of electronic data storage, the Court held that a warrant must be obtained from a neutral, detached magistrate before such a search may occur.  <u>Id</u>. at 2482.

Similarly, the <u>Galpin</u> Court cautioned against the inherent risk of privacy violations in the electronics realm.  <u>Galpin</u>, 720 F.3d at 447. The Court went on to

enunciate the unique problem posed by such searches.

> This threat [of privacy violations] is compounded by the nature of digital storage.  Where a warrant authorizes the search of a residence, the physical dimensions of the evidence sought will naturally impose limitations on where an officer may pry; an officer could not properly look for a stolen flat-screen television by rummaging through the suspect's medicine cabinet, nor search for false tax documents by viewing the suspect's home video collection.  Such limitations are largely absent in the digital realm, where the size or other outwardly visible characteristics of a file may disclose nothing about its content."

Id.

The traditional obvious contours and limitations of a residence or vehicle search, for example, are absent in an unfettered digital search.  For this very reason, some district court judge's have begun to specify parameters that must be observed by law enforcement when searching electronic devices.  As noted in Defendant's first motion to suppress, the warrant in this case was requested by police, and issued by a judicial officer of the State of Vermont, on October 25, 2013, *after* the Vermont Supreme Court had ruled in In re Appeal of Application for Search Warrant, 193 Vt. 51 (2012).[6]  The Court ruled that a judicial officer reviewing a search warrant for seizure of electronic devices may impose conditions on law enforcement in terms of how to carry out a search "in order to protect the privacy interests of the person to be searched."  Id. at 63.[7]

The digital search problem identified by the United States Supreme Court in Riley, the Vermont Supreme Court in  In re Appeal of Application for Search Warrant, and the

---

[6]Like the Galpin Court, the Vermont Supreme Court analyzed the 9th Circuit case, United States v. Comprehensive Drug Testing, Inc., CDT I,  579 F.3d 989 (9th Cir. 2009), on which the Honorable Michael Kupersmith "had explicitly relied" in imposing conditions that limited the scope fo the search.  In re Appeal of Application for Search Warrant, 193 Vt. 51, 65 (2012), and United States v. Comprehensive Drug Testing, Inc. (CDC II), 621 F.3d 1162 (9th Cir. 2010) (en banc) (per curium), in which the guidelines at issue were "retained only in the concurring opinion."  Id. at 67.

[7]No such conditions were imposed by the Superior Court judge in this case.

Second Circuit in <u>Galpin</u>, is further compounded when law enforcement ignores the warrant entirely and searches for evidence of a crime not specified therein. This is not a case of officers relying in good faith on a warrant, because it cannot be gainsaid that the warrant did not authorize a search for child pornography.  Moreover, upon information and belief, law enforcement in this case set out to *find* child pornography, because they hoped that finding it would transform a state court case, in which Defendant was living in the community on conditions of release, into a federal case, where it was likely he would be detained pending trial.  A federal prosecution also promised stiffer penalties.

The warrant application in this case reads in relevant part as follows: "Continuing, under the authority of this warrant, to conduct a search/analysis of the items seized for the evidence described, for as long as necessary at an off-site facility or facilities determined by law enforcement [sic]."  The evidence was not described, but this Court found that there was probable cause to search the residence and vehicle for evidence of statutory sexual assault, luring a child, and contributing to juvenile delinquency.  Once law enforcement had the warrant in hand, however, they used "unbridled discretion," <u>Arizona v. Gant</u>, 556 U.S. 332, 345 (2009), to search for evidence of child pornography.  The purpose of requiring particularity in a warrant is to avoid the type of prohibited exploratory searches such as occurred here.

> The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another.  As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.

<u>Marron v. United States</u>, 275 U.S. 192, 196 (1927).

Seizures of materials beyond the scope authorized in the warrant transform an otherwise valid search warrant into a prohibited general warrant. <u>Andresen v. Maryland</u>, 427 U.S. 463 (1987).  Because the warrant here unquestionably did not authorize a search for child pornography, Defendant contends that the evidence must be suppressed.  "Courts have also indicated that the drastic remedy of the suppression of all evidence

seized is not justified unless those executing the warrant acted "in flagrant disregard" of the warrant's terms." United States v. Matias, 836 F.2d 744, 747 -748 (2d Cir. 1998) (citations omitted).

If, however, the Court allows the government to argue that the search can be saved under the plain view doctrine, the question becomes thus: Can law enforcement's blatant disregard for the limitations set forth in the warrant in this case be saved by a finding that the evidence of child pornography was in plain view during the authorized search of the hard drive for the specified offenses. "The plain view doctrine permits an officer to seize evidence outside a warrant's authorization 'when it is immediately apparent that the object is connected with criminal activity, and where such search and seizure do not involve an invasion of privacy.'" Galpin, 720 F.3d at 450 (citation omitted). Determining the answer to this question requires an evidentiary hearing to determine the tools and methodology used by Jasinski in her search of Defendant's hard drive.[8]

As the Galpin Court noted, the danger inherent in broad searches of computers and hard drives is that it lends itself to invocation of the plain view doctrine in every such case. Id. at 447. The Galpin Court analyzed a search warrant for electronic equipment similar to the one at issue in this case. There, the search warrant authorized a search for a sex offender registration offense, but the government searched for evidence of child luring and child pornography. The Galpin Court highlighted the inherent risks of applying the plain view doctrine in electronic cases.

> As the Ninth Circuit has explained, because there is currently no way to ascertain the content of a file without opening it and because files containing evidence of a crime may be intermingled with millions of innocuous files, "[b]y necessity, government efforts to locate particular files will require examining a great many other files to exclude the possibility

---

[8]AUSA Christina Nolan has informed the undersigned counsel that a separate search of another hard drive by Frank Thornton also resulted in the discovery of child pornography. Mr. Thornton's report has not yet been produced, and Defendant has not been indicted on this evidence. In so far as the government intends to introduce that evidence under 404(b) in the upcoming trial, Defendant also challenges the search of that hard drive.

> that the sought-after data are concealed there." United States
> v. Comprehensive Drug Testing, Inc., 621 F.3d 1162, 1176
> (9th Cir.2010) (en banc) (per curium). Once the government
> has obtained authorization to search the hard drive, the
> government may claim that the contents of every file it chose
> to open were in plain view and, therefore, admissible even if
> they implicated the defendant in a crime not contemplated by
> the warrant.  There is, thus, "a serious risk that every warrant
> for electronic information will become, in effect, a general
> warrant, rendering the Fourth Amendment irrelevant.  This
> threat demands a heightened sensitivity to the particularity
> requirement in the context of digital searches.

Id. at 447 (citing United States v. Comprehensive Drug Testing, Inc., 621 F.3d 1162,

1176 (9th Cir. 2010).

The "heightened sensitivity to the particularity requirement in the context of digital

searches" mandates that an evidentiary hearing be held to determine how the child

pornography was found in this case.  Although the Galpin Court did "not impose any rigid

requirements in that regard at this juncture," it did remand the case for "the district court's

review of the plain view issue," directing that the district court "should take into account

the degree, if any, to which digital search protocols target information outside the scope

of the valid portion of the warrant.  To the extent such search methods are used, the plain

view exception is not available."  Id. at 451.

Finally, Defendant contends that the good faith exception under Leon is

inapplicable under the facts of this case.  In United States v. Leon, 468 U.S. 897, 923

(1984), the Court held that evidence seized pursuant to a warrant for which probable

cause does not exist, or which is technically deficient, is admissible if the executing

officers relied on the warrant in "objective good faith."  This Court has held that the

warrant at issued was not defective, and Defendant does not revisit that issue here.

Rather, Defendant avers that the government cannot hope to rely on Leon.  Simply put, it

cannot be argued that the officers relied on the warrant, because the warrant did not

authorize a search for child pornography.  The agents recklessly went beyond the scope of

the warrant to conduct a search for child pornography in the hope of getting the United

States Attorney's Office to take the case.   In short, law enforcement, acting in *bad faith*, unilaterally expanded the scope of the warrant.  Accordingly, the good faith exception under <u>Leon</u> does not apply.

### CONCLUSION

"[T]he central concern underlying the Fourth Amendment [is] the concern about giving police officers unbridled discretion to rummage at will among a person's private effects." <u>Gant</u>, 556 U.S. at 345.  Law enforcement exercising "unbridled discretion" is precisely what occurred here.  They took it upon themselves to expand the terms of the search warrant by searching for evidence of an offense for which no probable cause had been found, and for which a search was not authorized.  Accordingly, the evidence derived from the illegal search of Defendant's hard drives must be suppressed.

WHEREFORE, Defendant respectfully requests that this Court hold an evidentiary hearing and suppress the evidence seized pursuant to the unconstitutional search that occurred in this case.

Dated at Burlington, Vermont this 12$^{tk}$ day of March, 2015.

RICHARD CYR,

/s/ Maryanne Kampmann
MARYANNE E. KAMPMANN
STETLER, ALLEN & KAMPMANN
95 St. Paul Street
Burlington, Vermont 05401
(802) 660-8646
Kampmannlaw@aol.com

### Certificate of Service

I, Maryanne E. Kampmann, hereby certify that on March 12, 2015, I electronically filed the above pleading  with the clerk of the court using the CM/ECF system, which will send notification of such filing to the Office of the United States Attorney, District of Vermont, and to all counsel of record.

/s/ Maryanne Kampmann
MARYANNE E. KAMPMANN
STETLER, ALLEN & KAMPMANN
95 St. Paul Street

Burlington, Vermont 05401
(802) 660-8646
Kampmannlaw@aol.com