UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT


UNITED STATES OF AMERICA,      :
                               :
     v.                        :
                               :          Case No. 2:14-cr-19
RICHARD CYR,                   :
                               :
          Defendant.           :

## <u>Opinion and Order</u>

Defendant Richard Cyr was initially charged with one count
of using the internet to persuade a minor, K.S., to engage in
illegal sexual activity and one count of attempting to commit
that offense.  *See* 18 U.S.C. § 2422(b).  On November 14, 2014
the Court issued an Opinion and Order (the "November Order")
denying Defendant's first motion to suppress a state search
warrant related to those alleged crimes.  ECF No. 63.  The
government later filed a Second Superseding Indictment that
added new charges against Mr. Cyr, including offenses related to
child pornography.

Mr. Cyr now moves to suppress all evidence procured from
searching hard drives and electronic media seized under the
warrant he previously challenged.  Mr. Cyr argues that the
evidence was obtained in violation of his rights under the
Fourth Amendment to the United States Constitution.  ECF No. 90.
For the reasons described below, Mr. Cyr's motion is **denied.**

I.    **Relevant Background**

The Court presumes familiarity with the recitation of the facts in the November Order and incorporates them by reference herein.  Additional evidence related to the present motion was developed at an evidentiary hearing on July 30, 2015.

The hard drives and computers seized during the search of Mr. Cyr's residence and car were turned over to the Vermont Internet Crimes Task Force Computer Forensic Laboratory for analysis.  Deb Jasinski was tasked with investigating the contents of the seized evidence.  Before she began her analysis, Ms. Jasinski consulted the state warrant signed by Judge Robert P. Gerety, which Mr. Cyr challenged in his initial motion to suppress.  According to the application for the search warrant, the only offenses for which probable cause to search existed were sexual assault, luring a child, and contributing to juvenile delinquency.  ECF No. 90-2 at 5.  Ms. Jasinski testified that she was aware that these were the three crimes described in the warrant.

Ms. Jasinski also spoke to Special Agent ("SA") Michelle Delpha, one of the lead investigators handling the case, by telephone.  SA Delpha provided additional details regarding the investigation.  They spoke generally about the nature of the case and reviewed specific facts that were of interest to Ms.

Jasinski's analysis.  SA Delpha explained that Mr. Cyr had

allegedly created a Facebook profile under the name Ann Clancy

which he used to reach out to young women in the area under the

guise of becoming their friend.  She also told Ms. Jasinski that

Ann Clancy had contacted K.S. in this way, that K.S. had met a

man the investigators believed to be Mr. Cyr, and that some

sexual contact had taken place.  SA Delpha gave Ms. Jasinski

particular filenames relevant to the investigation.  One or more

of the filenames were linked to images of Mr. Cyr's penis.  Ms.

Jasinski could not remember where SA Delpha had gotten the names

of the relevant files but she knew they were a product of the

investigation.

Ms. Jasinksi was also made aware that K.S. told

investigators that she had sent a "headshot" to Mr. Cyr.  SA

Delpha described what K.S. looked like as well as additional

physical evidence seized from Mr. Cyr's residence indicating

that there might have been another victim with whom Mr. Cyr had

been communicating.  Finally, SA Delpha gave Ms. Jasinski a list

of email addresses connected to the case.

Based on all of this background information, page 2 of Ms.

Jasinski's report summarizing her investigation describes the

"Scope of Request (truncated and paraphrased)" to include

"search for keywords related to investigation of reported sexual

assault," "search for evidence of possession of child

pornography," and "search for evidence of attempting to entice other minors using electronic means."  ECF No. 90-3 at 3.  At first glance it might appear that Ms. Jasinski thought she was authorized to generally search for child pornography, but her testimony revealed that this was not the case.  Ms. Jasinski explained that this section of her report was her own interpretation of her authority to search based on her conversation with SA Delpha and her understanding of the search warrant.  Ms. Jasinski believed the warrant allowed her to search for child pornography because the warrant included the crime of luring minors using the internet.  Her prior case work and experience to date led her to believe that criminal defendants charged with luring frequently use images of child pornography to attempt to groom and normalize sexual behavior for their intended victims and to attempt to build a sense of intimacy between the perpetrator and the potential target.  Ms. Jasinski explained that child lurers use child pornography in several ways, including downloading images from the internet and exchanging personal photographs back and forth.  Ms. Jasinski testified that she had searched for child pornography in prior child luring cases.

Ms. Jasinski began her investigation by making a forensic copy of the hard drive.  This copy was an identical bit for bit image of the drive and enabled her to examine its contents while

keeping the evidence itself pristine.  She used a program called
Forensic Toolkit ("FTK") throughout her investigation.  Before
beginning any searching, Ms. Jasinski created an index using
FTK.  The software combed through the forensic copy of the hard
drive and made note of each word and group of numbers.  The
index is essentially a record of the frequency of words and
other groups of letters and numbers.  It allowed Ms. Jasinski to
search for filenames and other keywords of interest.

Ms. Jasinksi was particularly interested in searching for
various kinds of photographs including: child pornography
indicative of luring, photos with the filenames provided by SA
Delpha, photos related to the Ann Clancy Facebook account,
photos related to the location where Mr. Cyr allegedly met K.S.
or K.S.'s home, photos of K.S., and photos of other potential
victims.  An investigator cannot tell the content of a picture
file just by looking at its name or extension.  Both easily can
be changed to conceal a file's true contents and picture files
can be stored in virtually any area of the hard drive.  The only
way to ensure that all photographic evidence related to those
categories was found was to examine all image files on the
computer.

Mr. Cyr's motion to suppress seems to be focused on one
file tree of evidentiary significance.  In particular, Ms.
Jasinski found significant evidence in the "Porn" folder located

in the Dell drivers folder.  Ms. Jasinski testified that this was not an intuitive place to find images.  Drivers typically house pieces of software that allow a computer to interact with peripheral devices, such as a printer.  The "Porn" folder contained a subfolder labeled "kim the slut."  This latter folder contained photos from Facebook of an underage girl identified by investigators as K.P.  In some K.P. is nude and posed in sexually provocative poses.  The "Porn" folder also contained a subfolder called "babykatie," containing fully-clothed pictures of K.S. that were saved to the computer from Facebook, and "Me(s)," containing images of Mr. Cyr and an additional subfolder called "Red7745."  The "Red7745" subfolder contained images of a girl with red hair, one of which is the profile picture connected with the Ann Clancy Facebook account that Mr. Cyr allegedly used to lure his victims.  In some the girl pictured is completely nude and the Report describes the photos of her as "possible child pornography."  ECF No. 90-3 at 6.  The age of the red head in these photos has not yet been determined.

Ms. Jasinski testified that she found the "Porn" folder in one of two ways but she could not remember which route first led her there.  The first potential route was through the filenames SA Delpha provided.  She used the index in FTK to run a search for those files and FTK displayed the search hits returned.

Given the fact she knew the file she was searching for was a photo, Ms. Jasinski focused on the graphics category of search hits.  From there she was able to view the image where it was located within the folder tree.  This took her to the "Me(s)" subfolder.

The other route by which Ms. Jasinski came to the "Porn" folder was by searching for images of K.S., possibly the headshot that she knew K.S. had sent to the Ann Clancy Facebook account.  Ms. Jasinski used a function in FTK that pulled all the images on the hard drive together in one place for review. She then scrolled through thumbnails of the photos and looked for any of interest.  Eventually she came across images of a young girl that met the description of K.S. provided by SA Delpha.  She also confirmed that the filenames of these images were consistent with Facebook naming conventions.  She then viewed the image's location in situ on the forensic copy of the hard drive.  This took her to the "babykatie" subfolder.

Either way she arrived in the "Porn" folder - through the "Me(s)" subfolder by searching for the known filenames associated with images of Mr. Cyr or through the "babykatie" subfolder by searching through all of the images for a photograph of K.S. - Ms. Jasinski then proceeded to open every folder within the "Porn" folder.  It piqued her interest that images were stored in a non-standard location for images and she

7

believed the other subfolders could potentially contain relevant
evidence.  After she opened a subfolder she viewed thumbnails of
each subfolder's contents.

Mr. Jasinski questioned the age of the girl in the
photographs in the "kim the slut" folder.  She verbally advised
the investigative team of the presence of the folder.  Then
Detective Scott Clouatre came to her desk and viewed the
contents of the folder with her.  Detective Clouatre recognized
that the person depicted was someone under the age of sixteen
within his local jurisdiction, now known to be K.P.

In the November Order the Court held that the government
had probable cause to seize the category of records and
information described in the warrant application, including
papers, cell phones, computers, and so on, not simply Mr. Cyr's
Facebook files as he argued.  The Court also applied precedent
from the Second Circuit, *United States v. Rosa*, 626 F.3d 56 (2d.
Cir. 2010), and held that the government met its burden of
proving that the good faith exception applied.  For those
reasons the Court declined to suppress the search warrant even
though it was facially invalid due to an inadvertent error.  The
Court also noted that even if it had reached a different
conclusion with respect to probable cause and the good faith
exception, law enforcement discovered the Facebook and email
records through independent sources.

In his initial motion to suppress Mr. Cyr sought to exclude all fruits of the challenged search warrant, including the searches of the computers and hard drives seized.  The Court noted that because it declined to apply the exclusionary rule to the warrant, there was no reason to exclude the subsequent search of the computers and hard drives as fruit of the poisonous tree.  ECF No. 63 at 8 n.2.  Essentially the Court held that the government could use evidence from the subsequent search of the electronic items.

Several days after the Court issued its November Order, the government filed a Superseding Indictment.  ECF No. 65.  The government then filed a Second Superseding Indictment on December 17, 2014.  ECF No. 78.  The Second Superseding Indictment includes six counts: the two counts related to K.S. described in the original indictment, one count of attempting to persuade a minor, K.P., to engage in illegal sexual activity, one count of knowingly distributing a visual depiction of a minor engaging in sexually explicit conduct, one count of knowingly receiving such a visual depiction, and one count of knowingly possessing such a visual depiction.  *Id.; see* 18 U.S.C. §§ 2422(b), 2252(a)(2), 2252(a)(4)(B).

Mr. Cyr now argues that the government violated his Fourth Amendment rights by conducting a search for child pornography at the Vermont Internet Crimes Task Force Computer Forensic

Laboratory pursuant to a search warrant that did not authorize such a search.

## II.  Discussion

Mr. Cyr acknowledges that the Court has already declined to suppress evidence that he challenged in his first motion. However, he argues that he has not yet raised the issue presented in his current motion because he had not been charged with offenses related to child pornography at the time that he submitted his first motion.

The government argues that the Court should treat Mr. Cyr's motion as one for reconsideration.  The Court indeed previously upheld the propriety of conducting a forensic search of Mr. Cyr's hard drives.  In his initial motion, Mr. Cyr argued that there was no probable cause to search for child pornography because the supporting application made no mention of nude photos of K.S. or anyone else.  ECF No. 48 at 10-11.  In the November Order, the Court did not address the details of the searches of the seized hard drives.  The Court will take this opportunity to clarify its previous ruling with respect to the searches performed at the Vermont Internet Crimes Task Force Computer Forensic Laboratory.

## A. The Scope of the Search

The warrant application at issue in the November Order referenced statutes related to sexual assault, luring a child,

and contributing to juvenile delinquency.  It also described

K.S.'s contact with Ann Clancy via Facebook, that Ann Clancy had

set up the time and place for K.S. to meet up with someone, and

Detective Clouatre's suspicion that Ann Clancy was not a real

person but was actually Mr. Cyr.  Finally, it noted that there

were no records to substantiate that Ann Clancy was a real

person and that K.P. had shared a "headshot" with Ann Clancy.

ECF No. 90-2 at 7.

As an initial matter the Court notes that, consistent with

its previous ruling, there was in fact probable cause to search

for digital images related to the offenses listed in the warrant

application.  The investigators were therefore justified in

searching for a variety of images.  For example, photographs of

K.S. or other victims would tend to identify Cyr as the person

seeking to meet with girls and corroborate testimony about their

interactions with him.  While searching for even one type of

image often necessitates viewing, at least in thumbnail form,

essentially every image on the drive, there is no way around

that fact in this type of case.

K.S. voluntarily turned her computer over to the government

to use in its investigation.  The defense criticized Ms.

Jasinski's searches because she did not begin by using hash

values from known images on K.S.'s computer.  While perhaps this

might have been a slightly more efficient starting point, it

would not have been the end point.  Even Mr. Cyr's expert

testified that because changing a single pixel of an image or

re-sizing it the slightest amount changes the hash value, the

only way to ensure that all relevant evidence has been found is

to view every single image on the drive.  There is no way to use

keyword searching in a case like this because filenames can be

changed easily.  There was also no way to confine the search to

particular areas of the computer because image files can be

stored essentially anywhere.  It was therefore appropriate for

Ms. Jasinski to view all of the images collected by FTK.

    Ms. Jasinski testified that the note in her report

describing her intention to search for child pornography was

meant to describe a search for photographic evidence of child

luring and not possession of child pornography.  Although the

Court cannot be certain which of Ms. Jasinski's searches first

led her to the "Porn" folder, both were clearly related to the

facts described in the warrant application and what Ms. Jasinski

knew about the case.  Once she saw the title of the folder and

the subfolders within it, she reasonably concluded that its

contents were relevant to the alleged crime of child luring.  It

was therefore appropriate to open the folder and view the

photographs it contained by whichever method she used to arrive

there.  All the files that Mr. Cyr now challenges were properly

viewed in the context of a search previously approved by the

12

Court.   None of the new evidence the Court received has changed the Court's opinion that the searches performed at the Vermont Internet Crimes Task Force Computer Forensic Laboratory were in fact constitutional.

### B. Independent Source and Inevitable Discovery

Even if the challenged evidence was not within the scope of the warrant, the Court would decline to suppress it based on the inevitable discovery and independent source doctrine.

The independent source doctrine permits the admission of evidence seized pursuant to an unlawful search if that evidence would have been obtained through separate lawful means.  *United States v. Vilar*, 729 F.3d 62, 83 n.19 (2d Cir. 2013) *cert. denied*, 134 S. Ct. 2684 (2014).  The doctrine "rest[s] . . . upon the policy that, while the government should not profit from its illegal activity, neither should it be placed in a worse position than it would have otherwise occupied."  *Murray v. United States*, 487 U.S. 533, 542 (1988).

The inevitable discovery doctrine is related to and is an extrapolation from the independent source doctrine.  *United States v. Eng*, 971 F.2d 854. 859 (2d Cir. 1992).  It prescribes that "evidence obtained during the course of an unreasonable search and seizure should not be excluded if the government can prove that the evidence would have been obtained inevitably without the constitutional violation."  *Vilar*, 729 F.3d at 83-84

(internal quotation and citation omitted); *accord Nix v. Williams*, 467 U.S. 431 (1984).  To prevail under the inevitable discovery doctrine, the government must prove by a preponderance of the evidence that the evidence inevitably would have been discovered.  *Vilar*, 729 F.3d at 84.

The Court has already held that probable cause to search the Ann Clancy Facebook account arose prior to and independently of the search challenged in the initial motion to suppress.  *See* ECF No. 63 at 9 ("[T]he Facebook . . . records should not be suppressed because law enforcement discovered them through independent sources.").  The government also obtained a federal warrant to search the complete Ann Clancy Facebook account.  *See* ECF No. 20.  There is no evidence that any of the searches challenged in this motion represent the factual basis for the subsequent warrant thus tainting the subsequent warrant.  Mr. Cyr used Facebook as the medium through which he allegedly procured the child pornography of K.P.  The government would have inevitably obtained a search warrant to search the hard drives for child pornography after reviewing the Ann Clancy Facebook records and finding that Ann Clancy had asked K.P. to produce child pornography.  Therefore the Court declines to put the government in a worse position than it would have otherwise occupied if the hard drives had not been searched.

Accordingly, Mr. Cyr's motion is **denied**.

Dated at Burlington, in the District of Vermont, this 12th day of August, 2015.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge